JOHN CHAFFE, BRO. & SON *v.* SARAH F. TALIAFERRO.

1. SURETYSHIP. *Creditor misdealing with security. Effect as to rights of parties.* Mrs. T. and her son, A. T., gave to C. & Co. their joint note for $5,400, secured by a deed of trust on her plantation. Her purpose in giving the note was to obtain from C. & Co. mercantile advances for the firm of which her son was a member, but she did so upon the agreement of C. & Co. to transfer to her a note for $1,441 held by them against her son and secured by a mortgage on his homestead. When Mrs. T. signed the $5,400 note, the amount was left blank, to be filled out after it should be ascertained to what extent C. & Co. would make advances, they not being present. The extent of the advances was agreed upon between C. & Co. and A. T., and the amount of the note was

inserted by Mrs. T.'s agent to cover the advances and the $1,441 note to be transferred to Mrs. T.    The $5,400 note was discounted, and out of the proceeds C. & Co. paid themselves for the $1,441 note, but retained possession of it, no one demanding it.    Some time thereafter C. & Co., at the request of A. T., formally satisfied the mortgage against his homestead.    He then sold his homestead to an innocent purchaser, and the mortgage cannot now be enforced.    A. T. is insolvent.    Mrs. T. never demanded a transfer of the $1,441 note, and never expressed any dissatisfaction at the cancellation of the mortgage until she was called upon to pay her note, several months thereafter.    C. & Co. never denied her right to a transfer of the $1,441 note.    Suit having been brought upon the $5,400 note, Mrs. T. contended that she was not liable thereon, because of the failure of C. & Co. to transfer to her the $1,441 note, which transfer, as claimed, was a condition precedent to her execution of the note sued on.    *Held,* that the arrangement contemplated by Mrs. T. when she signed the note was substantially carried out, and she is bound by her undertaking; but the $1,441 note became her property by the payment thereof out of the proceeds of the new note, and the cancellation of the mortgage by C. & Co. was a misdealing with her security, and they are chargeable with the loss thereby occasioned to her.

2. SAME.  *Misappropriation of surety's means.  Consent of principal.  Effect.*
   Where a promissory note has been given by a principal and surety, secured by a deed of trust on the property of the latter, showing that the purpose of the surety was to obtain *future* mercantile advances for the principal, and the payee has the note discounted and applies a part of the proceeds to the payment of a *past* indebtedness of the principal, this is a misappropriation of the surety's means, and not binding on him if done without his knowledge or consent.

APPEAL from the Chancery Court of Copiah County.

Hon. E. G. PEYTON, Chancellor.

The case is stated in the opinion of the court.

*W. P. & J. B. Harris,* for the appellants.

It is to be observed that the complainant does not base her claim to relief on the ground that the $5,400 note or its proceeds was applied to existing indebtedness of her son instead of to future advances for him, but on the ground that she was to get the $1,441 note, and it was never transferred to her.  Any argument founded on the idea that the surety here contracted to become liable for the future and not for the past, and that the application of her suretyship to past debts was a violation of her contract, is plainly against her own hypothesis, and is not supported by the case made by the bill.  The bill does not

assail the transaction because of the application of the proceeds of the $5,400 note. The $1,441 note was left in Chaffe's hands without any complaint or demand by Mrs. Taliaferro's agent or herself. Its loss to her was occasioned by the negligence of her own agent, in whom she trusted, and by the act of her own son. The most that a court, on any principle of justice, could do for Mrs. T. is to allow her compensation for this loss because of the negligence of Chaffe. It would shock the moral sense to inflict on Chaffe a forfeiture of the whole contract.

To escape this just conclusion, it is contended that it is not a case for compensation, because the transfer of the note was a condition precedent to be performed by Chaffe before the note of $5,400 could become a liability. A stipulation is not a condition precedent because parties or pleaders choose to designate it such. So far from treating the stipulation as a condition precedent and making time essential, the agent and the son did not demand the transfer at the time, but delivered the note and recorded the deed.

We press the point that the Chaffes are not responsible at all, but if they are, then only to the extent of the loss occasioned by their act or neglect.

Can it be said that the failure to get the note and deed of trust here is due altogether to the Chaffes? It is clear that Mrs. Taliaferro might have demanded a transfer, if that was needed. She might have foreclosed the deed or mortgage at any time, notwithstanding the possession of the evidences of debt by Chaffe; and if this does not present a case in which the loss ought to fall on her, it most clearly does present a case which takes from her the right in equity to demand a discharge from her contract. It is a case for compensation only. *Payne* v. *Commercial Bank*, 6 Smed. & M. 24; *Johnson* v. *Planters' Bank*, 4 Smed. & M. 165; *Hays* v. *Ward*, 4 Johns. 123; 65 Mo. 63; *Cooper* v. *Wilcox*, 2 Dev. & B. 91; 2 White & Tudor Ld. Cas. 1901, 1902, and cases cited there.

*W. P. Harris*, of counsel for the appellants, argued the case orally.

J. A. *Brown*, for the appellee.

By reason of Chaffe's failure to assign the $1,441 note and mortgage to Mrs. Taliaferro, the mortgage on Spring Hill is without *consensio mentium*, and null.   Mrs. Taliaferro agreed to execute the mortgage on Spring Hill if Chaffe would assign her the mortgage on the town property ; such was the contract which she consented to.   But that contract was never made. Chaffe never assigned the homestead mortgage ; and to Chaffe's contract Mrs. Taliaferro never assented.   Lumpkin, J., in *Bethune* v. *Dozier*, 10 Ga. 238, 239, says : "Neither is it of any consequence that the alteration in the contract is trivial, nor even that it is for the advantage of the surety. *Non hæc in fœdera veni* is an answer in the mouth of the surety from which the obligee can never extricate his case, however innocently or with whatever kind intentions to all parties he may have been actuated."   Chaffe had full notice of the condition precedent, and the authority of Roberts was alone to fill the blank in the note and trust-deed with the sum agreed on.   This Chaffe knew, for it was a written power of attorney, and left in Chaffe's possession.   Roberts had no power to vary Mrs. Taliaferro's contract, and if Chaffe did not assent to it in the form which she put it, no contract has ever been made.   If he did so assent, Mrs. Taliaferro is not bound, because he failed to comply with the precedent condition. It takes two to make a contract.   The surety who stipulates for indemnity as a condition of his suretyship is not bound unless the indemnity is given.   Its amount or value is immaterial.   No contract is made until that condition is performed. It is a material variance in the proposed undertaking of the surety either to fail to give the indemnity or cancel it afterwards ; and the contract proposed by the surety not existing, the court cannot make a contract for him.   The misapplication of money, agreed to be advanced at eight per cent interest, to the payment of usury and antecedent debts rests upon precisely the same ground in avoiding the contract.   It varies the agreement of the surety, and as his contract is *stricti juris*,

the question whether the variance is beneficial is not regarded. If there is any variance at all, the surety's answer is, *In hœc fœdera non veni*. *Pidcock* v. *Bishop*, 10 Eng. Com. Law, 197.

J. A. *Brown* also argued the case orally.

CHALMERS, C. J., delivered the opinion of the court.

Mrs. Taliaferro executed jointly with her son, Charles A. Taliaferro, a promissory note for $5,400 to the firm of Chaffe, Bro. & Son, of New Orleans, and secured payment of the same by a trust-deed upon her plantation, known as Spring Hill. The object of the transaction was to obtain advances of money and supplies from the New Orleans merchants to a business firm in Hazlehurst, of which her son was a member; and as the amount which Chaffe, Bro. & Son might be willing to advance was uncertain at the time Mrs. Taliaferro signed the note, the amount to · be specified in it was left blank. She executed to her son-in-law, Calvit Roberts, a power of attorney to fill up the blank with such sum as he and Chaffe might agree upon. The firm of which her son was·a member was at the time largely indebted to Chaffe & Co., but this fact was unknown to her. Her son was also individually indebted to the New Orleans firm in the sum of $1,441, evidenced by a promissory note and secured by trust-deed upon his homestead, and Mrs. Taliaferro required, as a condition precedent to the execution of her own note and trust-deed, that this debt of her son's should be transferred to her. This demand was by Roberts communicated to Chaffe, who readily assenting to it, the blank in the joint note of Mrs. Taliaferro and Charles A. Taliaferro was filled up with an amount ($5,400) sufficient to cover the advances desired and the added sum of $1,441, the amount of Charles A. Taliaferro's individual note, which was to be transferred; and when, shortly afterwards, the new note was discounted, as it was originally contemplated that it should be, a sufficient amount of its proceeds to extinguish or purchase the $1,441 note was applied to that purpose. The latter note thus became the property of Mrs.

Taliaferro, but remained in the hands of Chaffe, Bro. & Son. Subsequently, at the request of Charles A. Taliaferro, Chaffe, Bro. & Son satisfied the mortgage on his homestead by which this note was protected, and, the property being thereafter sold by Charles A. Taliaferro to an innocent purchaser, Mrs. Taliaferro has been unable to enforce a collection of this note, and as her son is insolvent it has proved a total loss to her. As this loss occurred through the joint act of her son and Chaffe & Co., the question presented is, how are the rights of the parties affected thereby? Mrs. Taliaferro insists that she is wholly released from all liability upon her note for $5,400, while Chaffe, Bro. & Son insist that the utmost extent of her right is to be credited with the amount of the lost note. Mrs. Taliaferro's claim is based upon the theory that the surrender and transfer to her of the note of $1,441 was made by her a condition precedent to the execution of the larger note and mortgage, without the doing of which she absolutely and positively refused, as she alleges, to go into the matter at all, and that, inasmuch as this condition was never complied with, no liability ever attached upon the note for $5,400.

Her anxiety to obtain the $1,441 note sprung, as she says, out of the fact that she already held an unsecured note of $1,700 against her son, and this prompted the desire to obtain the note which was secured on the homestead. We do not doubt that Mrs. Taliaferro is correct in the statement that she made the transfer of the $1,441 note a condition of her execution of the larger one, but we feel certain that she is mistaken as to the motives that prompted and the considerations that controlled the negotiation. She could not have expected Chaffe, Bro. & Son to have made her a present of the $1,441 note, or to have obtained it without paying for it; and as she furnished no money for its purchase, she must have expected that the amount of it would be embraced, as it was, in the new note. Certainly this was the expectation and understanding of her son and son-in-law, and of Chaffe, Bro. & Son. The obtaining control of a mortgage on her son's homestead,

thereby shielding him from being ejected by his creditors, might well be an object of desire on her part; but we fail to see how, apart from this, the fact that she already held a worthless note against him could make the wish to obtain a second one so strong as to prompt a refusal to aid him if this was not done.  We think the truth undoubtedly is that she desired to control the homestead debt, and was unwilling to encumber her property for advances to her son unless she was permitted to do so; but she expected to obtain that control by embracing the amount of the old note in the new one. She had a right, which Chaffe & Co. always acknowledged, to have the evidences of that debt transferred to her, but she never called for such transfer, and she gave Chaffe no notice of dissatisfaction for many months after she had knowledge of his cancellation of the mortgage, nor until she was called upon to pay her own note.

If Chaffe, when the negotiation was first proposed to him, had declined to transfer the homestead debt, preferring to retain it himself, and Roberts, in violation of Mrs. Taliaferro's instructions, had nevertheless filled up and delivered the note for further advances, his act would not have been binding on her; but as the arrangement desired by her was in effect carried out as originally contemplated, and there has been nothing more than a misdealing with a security belonging to her, the proper course is to charge Chaffe & Co. with the loss of that security.  In settling the rights and liabilities of sureties, who are always favored by the courts, it is sometimes difficult to distinguish between such variations of their contracts as will discharge them wholly, and such misconduct towards them as will discharge *pro tanto* only; but we are satisfied that the facts of this case bring it within the latter class.  The fact that there was no manual delivery or written assignment of the note of her son to Mrs. Taliaferro did not constitute a violation of the terms of the contract which her son-in-law, Roberts, was authorized to make for her.  From the date of the application of a portion of the proceeds of the larger note to the

smaller one, the latter was her property, which she could at any time have received upon demand. Her right to receive it was never asserted by her nor denied by Chaffe. It remained, therefore, as her property in Chaffe's hands, and its subsequent destruction was in no sense an alteration of the original contract, but simply an impairment of securities belonging to her. The remedy is to be found, not in releasing her from all liability upon her contract, but by compelling Chaffe.to make good the loss sustained by his misconduct in satisfying the mortgage on the homestead.

Mrs. Taliaferro, in executing the note for $5,400, became the surety or guarantor for such advances as might thereafter be made to the firm of which her son was a member, as is clearly shown by the trust-deed given to protect it, and by the power of attorney authorizing Roberts to fill up the blank in it. The larger portion of the proceeds arising from its discount was by Chaffe & Co. applied, by the consent of Roberts and Charles A. Taliaferro, but without the knowledge of Mrs. Taliaferro, to the satisfaction of the former indebtedness due from Roberts & Taliaferro to the New Orleans firm.

This was a misapplication and perversion of Mrs. Taliaferro's means, and not binding upon her, as was rightfully held by the chancellor; but the point is not made by the pleadings. She rests her right to relief entirely upon the idea that there was a variation of the contract by the failure to assign to her the note for $1,441, and upon alleged illegal charges in Chaffe's accounts against her son's firm and failure to give proper credits upon the same. There is no allusion whatever to the fact that she was improperly held for past debts. If this occurred, as counsel suggests, because of ignorance of the fact that her money had been so applied, she should have amended her bill when the facts were disclosed, so as to have given Chaffe & Co. an opportunity, by cross-bill, to have sought a reformation of the writings, if the writings failed, as is suggested by opposing counsel, to express the true intention of the parties.

The decree will therefore be reversed and cause remanded, with leave to both parties to amend pleadings.

COOPER, J., having been of counsel in the case, took no part in this decision.